UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRACEY L. POWER,<br><br>Plaintiff,<br><br>v.<br><br>BAYONNE BOARD OF EDUCATION, and PATRICIA L. MCGEEHAN, individually; and JOHN DOES 1-5; and JANE DOES 1-3; and XYZ CORPORATIONS 1-3,<br><br>Defendants. | Civ. No. 16-5091 (KM) (JBC)<br><br>OPINION |

## KEVIN MCNULTY, U.S.D.J.:

Plaintiff Tracey L. Power ("Power") brought this action against Defendants Bayonne Board of Education ("BBOE") and Superintendent Patricia L. McGeehan, in her individual capacity (collectively, the "Defendants"). She alleges that the Defendants retaliated against her for whistleblowing activities in connection with misconduct in the BBOE student athletic programs. Power's complaint (ECF no. 1, cited hereinafter as the "Complaint")[1] alleges that

---

[1] Record items cited repeatedly will be abbreviated as follows:

| | |
|---|---|
| "Compl." = | Complaint and Jury Demand (ECF no. 1-1) |
| "Def. Mot." = | Brief of Defendants Bayonne Board of Education and Patricia L. McGeehan in Support of Motion to Partially Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF no. 3-1) |
| "Pl. Opp." = | Plaintiff Tracey L. Power's Brief in Opposition to Defendant's Partial Motion to Dismiss Plaintiff's Complaint (ECF no. 5) |

1

Defendants violated her rights under the First and Fourteenth Amendments to the United States Constitution, the New Jersey Law Against Discrimination, and the New Jersey Constitution. She also asserts common law causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing.

For the reasons stated below, Defendants' motion to partially dismiss the Complaint is **GRANTED IN PART** and **DENIED IN PART**. Accordingly, Count 5 is dismissed in its entirety without prejudice. The remainder of the Complaint (Counts 1, 2, 3, and 4) will go forward.

## I. BACKGROUND

Plaintiff Tracey L. Power is employed by the Bayonne Board of Education as an athletic trainer and teacher. (Compl. ¶ 2) She alleges that in September 2014, she formally complained to her supervisors about various legal and policy violations in connection with the student athletics program. Her complaints included allegations that medications were being illegally administered to student athletes, and that a former coach for the football team allowed students without medical clearance to participate in team practices, ignored the heat indices, and conducted contact drills "prior to the time allowed." (*Id.* ¶ 3) In response, Power alleges, Superintendent McGeehan covered up the allegations, and the Bayonne Police "visited" Power in an attempt to intimidate her. The Complaint alleges that, in retaliation for these and similar complaints that Power made in September 2015, Power was "removed from her position as Athletic Trainer for the Football Team," and was "ordered not to step on or near the Football Field." (*Id.*)

Power continued to make these and other complaints to the "Central Office," Executive Director Steven J. Timko, Commissioner David C. Hespe, and

---

"Def. Reply" = Reply Brief of Defendants Bayonne Board of Education and Patricia L. McGeehan in Response to Plaintiff's Opposition to Defendants' Motion to Partially Dismiss the Complaint (ECF no. 6)

state and federal agencies, including the DEA. (*Id.*) Power was again visited by the Bayonne Police, her work schedule was changed, she was "moved from her position and [her] remuneration . . . was reduced," and Superintendent McGeehan "illegally procured the services of an investigative service to subject Plaintiff Power to unnecessary questioning for several hours, delving into personal life activities." (Compl. ¶¶ 4–5, 8)

Seeking redress for alleged violations of her rights under the federal and State constitutions and laws, Power commenced this action on August 19, 2016. (ECF no. 1) On September 9, 2016, Defendants moved to partially dismiss Power's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF no. 3) That motion is now before the Court.

## II.    LEGAL STANDARD ON A RULE 12(b)(6) MOTION TO DISMISS

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("reasonable inferences" principle not undermined by later Supreme Court *Twombly* case, *infra*).

Fed. R. Civ. P. 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has

3

"facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678 (2009).

The United States Court of Appeals for the Third Circuit, interpreting the *Twombly/Iqbal* standard, has provided a three-step process for analyzing a Rule 12(b)(6) motion:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. *See* [*Iqbal*, 556 U.S.] at 675; *Argueta* [*v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 73 (3d Cir. 2011)]. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

*Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

### III. DISCUSSION

#### A. BBOE's *Monell* Liability as to Power's Free Speech Claims (Counts 1–2)

Counts 1 and 2 of the Complaint allege that Defendants violated Power's right to free speech by retaliating against her for making protected communications.

In Count 1, Power asserts section 1983 claims alleging that Defendants violated her rights under the First and Fourteenth Amendments to the United States Constitution. (Compl., Count 1, ¶¶ 1–6) Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the

District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Thus, to sufficiently set forth a section 1983 claim, a complaint must allege the violation of a right secured by the Constitution or laws of the United States and that the alleged violation was committed by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250 (1988).

In the Second Count, Power asserts similar claims under the New Jersey Civil Rights Act (the "NJCRA"), N.J.S.A. § 10:6-2, alleging that Defendants violated her free speech rights under Article I of the New Jersey Constitution. (Compl., Count 2, ¶¶ 1–8) The NJCRA "was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitutions." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). "This district has repeatedly interpreted NJCRA analogously to § 1983." *Id.* Therefore, I address Counts 1 and 2 together.[2]

---

[2] The protections of the free speech clause of the New Jersey Constitution are "generally interpreted as co-extensive with the First Amendment." *Borden v. Sch. Dist. of Twp. of E. Brunswick*, 523 F.3d 153, 164 n.5 (3d Cir. 2008) (quoting *Twp. of Pennsauken v. Schad*, 160 N.J. 156, 733 A.2d 1159, 1169 (1999)); *see also Garcia v. Speziale*, No. 10-CV-2637, 2015 WL 1307323, at *6 (D.N.J. Mar. 23, 2015) ("It is clear that in the context of retaliation, New Jersey courts rely on federal constitutional principles in interpreting the State Free Speech clause.") *See Middleton v. City of Ocean City*, No. CIV. 12-0605 RBK/JS, 2014 WL 2931046, at *5 (D.N.J. June 30, 2014) ("As the allegations under the separate constitutions are virtually identical, and federal and New Jersey law governing these violations are substantially similar, the Court will address them together.")

However, that is beside the point here, because Defendants' challenge relates not to the elements of a free speech violation but rather to the sufficiency of the allegations of a policy or practice that would subject BBOE to *Monell* liability for Superintendent McGeehan's actions.

Defendants contend that the Complaint fails to allege any facts that would subject BBOE to liability for Superintendent McGeehan's actions. (Def. Mot. 8–10) I disagree.

It is well established that the liability of a government body (typically a municipality) under section 1983 "may not be proven under the respondeat superior doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018 (1978)). As a consequence, a municipality may be liable under section 1983 only where the constitutional injury is alleged to have been caused by a municipal "policy" or "custom". *See Monell*, 436 U.S. at 694, 98 S. Ct. 2018.

A municipal policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (internal quotations omitted). In a proper case, "even one decision by a school superintendent, if s/he were a final policymaker, would render his or her decision district policy." *McGreevy v. Stroup*, 413 F.3d 359, 367–68 (3d Cir. 2005) (considering whether a school superintendent in Pennsylvania was a final policymaker with regard to allegedly retaliatory issuance of substandard employment rating for school nurse); *see also Ecotone Farm LLC v. Ward*, 639 F. App'x 118, 127 (3d Cir. 2016) (not precedential) (town engineer's decision to enforce a soil disturbance ordinance was attributed to the township because he was the final policymaker in that domain).

As the Third Circuit has explained, "[i]n order to ascertain who is a policy maker a court must determine which official had final, unreviewable discretion to make a decision or take action." *McGreevy*, 413 F.3d at 369 (emendation in original) (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). A school board may be the final policymaker with respect to some actions while the school superintendent is the final policymaker with regard to others. *See id.*

6

at 368–69 (a Pennsylvania school board is final policymaker regarding dismissal of employees but the superintendent is the final policymaker over employee ratings determinations).

Defendants contend that the Superintendent "does not have the authority under New Jersey School laws to set policy on behalf of the Board." (Def. Reply 5) (citing N.J. Stat. Ann. § 18A:11-1(c)) The general mandatory powers and duties of a board of education in New Jersey are listed in N.J. Stat. Ann. § 18A:11-1. Pursuant to that statute,

> The board shall . . . [m]ake, amend and repeal rules, not inconsistent with this title or with the rules of the state board, for its own government and the transaction of its business and for the government and management of the public schools and public school property of the district and for the employment, regulation of conduct and discharge of its employees, subject, where applicable, to the provisions of Title 11, Civil Service, of the Revised Statutes

*Id.* § 18A:11-1(c).

BBOE's power to "make, amend, and repeal rules . . . for the employment, regulation of conduct and discharge of its employees," *id.*, may relate to the question of whether the Superintendent's employment and disciplinary decisions and actions are reviewable by BBOE. If so, however, Defendants have not drawn the connection, and it does appear that district superintendents exercise a great deal of autonomy. New Jersey has accorded district superintendents "general supervision over . . . the schools of the district or districts under rules and regulations prescribed by the State board." *Id.* § 18A:17-20. Defendants have not pointed to any statute, rule, or regulation providing for a board's input with respect to individual decisions and actions a superintendent takes in her supervisory capacity. Thus, based on the information available at this, the motion to dismiss stage, it is plausible that the superintendent has final unreviewable authority as to the alleged actions taken against Power.

Power alleges that after making "protected communications" she was subjected to punitive actions, including Superintendent McGeehan's "illegal[]

7

procure[ment of] the services of an investigative service to subject . . . Power to unnecessary questioning for several hours, delving into personal life activities." (Compl. ¶ 8) Reading the Complaint in the light most favorable to the plaintiff, as I must, Power has plausibly alleged that McGeehan, as Superintendent, was in a position of final policy-making authority with respect to allegedly punitive actions against Power, and that the Superintendent's actions should be deemed to bind BBOE. Accordingly, Defendants' motion to dismiss the First and Second Counts as to BBOE is denied.

### B. Fourteenth Amendment Violations as to Superintendent McGeehan (Count 1)

Regarding Count 1, Superintendent McGeehan, sued in her personal capacity, seeks the dismissal of Power's Fourteenth Amendment claim. (Def. Mot. 10–13) Defendants argue that the Complaint fails to identify the particular right affected and fails to allege facts sufficient to hold Superintendent McGeehan liable for a Fourteenth Amendment violation. (Def. Mot. 12) I disagree.

In context, it appears that Count 1 cites the Fourteenth Amendment only insofar as it incorporates against the states the First Amendment protection of free speech. *See Schneider v. State of New Jersey,* 308 U.S. 147, 60 S. Ct. 146, 160 (1939). Each reference to the Fourteenth Amendment is clearly attached to the allegations that Power was retaliated against for protected communications.[3] (*See* Compl., Count 1, ¶¶ 2–3) Count 1 does not mention substantive or procedural due process or the Equal Protection clause.

---

[3] Count 1 states:

2. The federal first and fourteenth amendments as enforced under § 1983, prohibit an employer from taking retaliatory action against an employee because the employee objects to any activity, policy or practice that "the employee reasonably believes . . . is in violation of a law, or a rule or regulation promulgated pursuant to law."

3. Because Plaintiff made the above stated protected communication, her actions were protected by the first and fourteenth amendment.

Read in the light most favorable to the plaintiff, the Complaint's Fourteenth Amendment claim is plainly intertwined with the First Amendment claim, and Defendants do not challenge the sufficiency of the pleadings for the First Amendment claim as to the Superintendent. Simply put, Defendants' arguments seem to target claims that do not appear in the Complaint.[4] Accordingly, Defendants' motion to dismiss the Fourteenth Amendment claims as to Superintendent McGeehan is denied.

---

(Compl., Count 1, ¶¶ 2–3)

[4] True, Power's opposition brief states that "Plaintiffs adequately pled that their equal protection and due process rights under the Fourteenth Amendment were violated." (Pl. Opp. 14) (citing Compl. ¶ 22) However, Power's counsel appears to have transposed that argument, verbatim, from some other context, because: (1) There is only one plaintiff in this case, rendering the plural form inapposite; (2) The brief cites paragraph 22 of the Complaint, but there is no such paragraph; and, most significantly, (3) As discussed above, there is no indication in the Complaint that Power intended to plead violations of her Due Process or Equal Protection rights in Count 1.

The Complaint contains one stray reference to "due process." (Compl. ¶ 3.c.ii) The due process reference appears in a list of questions Power allegedly presented to Superintendent McGeehan, including: "Why [is] Ms. Power's tenured position of Athletic Trainer . . . not provided the due process required of such a tenured position?" (*Id.* ¶ 3.c.ii) This one statement in the Complaint's factual recitation hardly amounts to a claim for a distinct cause of action.

Although the Complaint clearly alleges discriminatory treatment elsewhere (*see* Counts 3 and 4 for New Jersey Law Against Discrimination hostile work environment and retaliation claims), Count 1 alleges that Power's *communications* were protected by the Fourteenth Amendment (Count 1, ¶ 3), rather than her right to procedural due process or her protected class (gender).

I do not speculate whether Fourteenth Amendment claims for Due Process or Equal Protection violations are appropriate here or whether they would survive a motion to dismiss if actually alleged.

## C. Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing as to All Defendants (Count 5)

In Count 5, Power asserts claims for breach of contract and breach of the implied covenant of good faith and fair dealing against BBOE and Superintendent McGeehan.[5] Defendants move to dismiss these claims, arguing that, *inter alia*, Power has not alleged the existence of an explicit employment contract, and the policy manual provision upon which she bases her claim cannot create an implied contract.[6] (Def. Mot. 14–16) I agree.

To state a claim for breach of contract, a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing there from; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). "In order for a valid contract to exist, Plaintiff must show mutual assent, consideration, legality of the object of the contract, capacity of the parties and form[ality] of memorialization." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 421 F. Supp. 2d 831, 833 (D.N.J. 2006) (citing *Cohn v. Fisher*, 118 N.J. Super. 286, 291, 287 A.2d 222 (1972)).

Power has failed to plausibly allege that a valid contract existed. She concedes that her employment with BBOE is "at-will." (Pl. Opp. 21) ("It is clear as an employee that Plaintiff Power is 'at-will.'") In New Jersey, unless there is an agreement to the contrary, an employer may terminate an at-will employee

---

[5] Superintendent McGeehan is not alleged to be a party to any contract with Power. (Def. Mot. 13–14) Indeed, in her opposition brief, Power concedes that the Complaint does not allege breach of contract, but only breach of the implied covenant of good faith and fair dealing as to Superintendent McGeehan. (Pl. Opp. 21) ("[T]he Breach of Contract is alleged against Defendant BBOE (not Individual Defendant McGeehan).")

[6] Defendants also argue that Power's claim for emotional distress damages is barred by the New Jersey Law Against Discrimination's exclusive remedy provision, and, further, tort damages are unavailable on a claim for breach of contract and breach of the covenant of good faith and fair dealing, unless there is a claim for a violation of public policy. (Def. Mot. 16–17)

"for good reason, bad reason, or no reason at all," *Witkowski v. Thomas J. Lipton, Inc.*, 136 N.J. 385, 643 A.2d 546, 552 (N.J. 1994) (citing *English v. Coll. of Med. & Dentistry*, 73 N.J. 20, 372 A.2d 295 (N.J. 1977)). An agreement restricting an employer's freedom to terminate an at-will employee "can be implied from a widely distributed employment manual that articulates terms and conditions of employment, including grounds and procedures for termination." *Russelman v. ExxonMobil Corp.*, No. CIV. 12-752 RBK/AMD, 2012 WL 3038589, at *5 (D.N.J. July 25, 2012) (citing *id.* at 553). A claim for breach of such an agreement is known as a *Woolley* claim, after the New Jersey Supreme Court case that recognized it, *Woolley v. Hoffmann-La Roche, Inc.*, 99 N.J. 284, 491 A.2d 1257 (1985).

At any rate, Power has not alleged that she was fired at all. Rather, she says she was subjected to various punitive actions short of dismissal. For example, although the Complaint does not allege that Power was dismissed, it does allege that Power was "removed from her position as Athletic Trainer for the Football Team" (Compl. ¶ 3.b)—in effect, a demotion, or at best a lateral transfer. *Woolley*, however, involved an implied promise that an employee would be *fired* only for cause, 99 N.J. 284, 491 A.2d 1257, and Power has not pointed to any case in which New Jersey courts have extended *Woolley* beyond the context of a dismissal. As a result, for this reason alone, Power has not plausibly alleged the existence of a valid contract, express or implied, as a matter of law, and her breach of contract claim must fail.

Even if I were to assume *arguendo* that a New Jersey court would extend *Woolley*'s holding to the context of adverse employment actions, I would have to find that Power has failed to allege the other elements of a *Woolley* implied-contract claim.

To state a *Woolley* claim, a plaintiff must point to some language in the manual that contains "an express or implied promise concerning the terms and conditions of employment." *Id.* (citing *Witkowski*, 643 A.2d at 552; *Doll v. Port Auth. Trans–Hudson Corp.*, 92 F. Supp. 2d 416, 423 (D.N.J. 2000) ("[I]n order to

state a *Woolley* claim in the first instance, plaintiff must bring to the Court's attention some provision or language in the employment manual that guarantees the employee will not be terminated except for good cause.")).In order "[t]o determine whether an employment manual creates contractual obligations, a court should consider whether a fair reading of the manual gives rise to the reasonable expectations of employees that 'certain benefits are an incident of the employment (including, especially, job security provisions).'" *Id.* at *6 (quoting *Witkowski,* 643 A.2d at 552). "Factors relevant to whether a manual gives rise to the reasonable expectation of employer obligations include the 'definiteness and comprehensiveness of the termination policy and the context of the manual's preparation and distribution.'" *Id.* (quoting *Witkowski,* 643 A.2d at 550).

Here, Power's Complaint fails to identify provisions in the policy manual that would, under a fair reading, give rise to a reasonable expectation that the benefits she claims she was denied are an incident of the employment. Power makes general reference to the handbook, manual, and collective bargaining agreements. She identifies only one specific provision, however, that Defendants allegedly breached: the policy manual's alleged promise to "look after the Plaintiff's interests."[7] This single quotation,[8] unmoored from its

---

7   In connection to her breach of contract claims, Power alleges the following:

   2. The requirements of collective bargaining, civil service employment, employee handbook, and the actual documents created a contract between Plaintiff and Defendant Bayonne Board of Education because the documents' plain language led her to reasonably believe that the BBOE policies regarding, *inter alia,* job ability and security would be honored.

   3. In failing to inform Plaintiff of her statutory rights under the law, countenance of allowing third parties (John Does, Jane Does, and XYZ Corps) to interfere with the employment of Plaintiff, Defendant BBOE failed to discharge its contractual duties as set forth in the Manual, Rules, Agreement and Handbook. Similarly, Defendant BBOE committed and allowed additional breaches when, in contravention of the Manual's mandate, it failed [] "to look after Plaintiff's interests" and make a good faith effort to protected [sic] Plaintiff after she made the disclosures described herein due to the actions of Defendant McGeehan, Defendant

12

context, is plainly insufficient to constitute an "express or implied promise concerning the terms and conditions of employment."

Power may be claiming that Defendants' actions were proscribed by generalized anti-discrimination language. If so, the claim must fail, because the Third Circuit has held that such language is inadequate to create a contract. *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841 (3d Cir. 2016) (not precedential) (citing *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 309 (3d Cir. 2004) ("New Jersey law does not provide a separate breach of contract cause of action on the basis of generalized anti-discrimination language in an employee handbook where the alleged discrimination would be in violation of the NJLAD.")).

In sum, Power's breach of contract claim amounts to little more than a threadbare recital of the elements of the claim. Such bare allegations do not meet the *Iqbal-Twombly* pleading standard. Therefore, I will grant Defendants' motion to dismiss Power's breach-of-contract claims.

I have found that the Complaint does not sufficiently allege the existence of a contract between Defendants and Power. The implied covenant of good faith and fair dealing is not a free-standing cause of action; such a covenant is an implied covenant *of a contract*. "[I]n the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing." *Noye v. Hoffmann-La Roche Inc.*, 238 N.J. Super. 430, 433, 570 A.2d 12, 14 (App. Div.

---

John Does 1- 5, Jane Does 1-3; and Defendant XYZ Corporations 1-3. Further, Defendant BBOE failed to adhere to the contract with respect to allowing Plaintiff to independently perform the functions of her employment without interruption, intimidation, reprisal, and retaliation in actions orchestrated by Defendants McGeehan, John Does 1-5, Jane Doe 1-3; and XYZ Corporations 1- 3.

(Compl., Count 5, ¶¶ 2–3)

8   Actually, it is unclear whether this is a direct quotation. I doubt, for example, that the manual refers to the employee as "Plaintiff." I will, however, construe the Complaint as at least accurately paraphrasing the manual.

1990)). I therefore will also dismiss Power's claim for breach of the implied covenant of good faith and fair dealing.

The motion to dismiss is therefore granted to the extent that the claims for breach of contract and breach of the implied covenant of good faith and fair dealing are dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to partially dismiss the Complaint is **GRANTED IN PART** and **DENIED IN PART**. Count 5 is dismissed in its entirety without prejudice to the filing of a properly supported motion to amend, pursuant to Fed. R. Civ. P. 15, attaching a proposed amended complaint, within 30 days. The motion to dismiss is denied as to the remainder of the Complaint (Counts 1, 2, 3, and 4).

Dated: April 26, 2017

_____
HON. KEVIN MCNULTY, U.S.D.J.