UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRACY L. POWER,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>BAYONNE BOARD OF EDUCATION, AND PATRICIA L. MCGEEHAN, et al.,<br><br>　　　　　　　　Defendants. | Civ. No. 16-05091 (KM)(JBC)<br><br>OPINION |

**MCNULTY, U.S.D.J.:**

Plaintiff Tracy L. Power, a teacher and athletic trainer in the Bayonne school district, alleges that she was demoted in retaliation for reporting that the school's football coach was giving painkillers to football players, and also that she was subjected to a hostile work environment.[1] Both parties now move for summary judgment on these claims. For the reasons set forth in more detail below, defendants' motion (DE 93) is **GRANTED** and Power's motion (DE 92) is **DENIED**.

**I.　BACKGROUND**

Power began working in the Bayonne school district in 2006 and received tenure in 2010. (DSOMF ¶ 4-6.)[2] Beginning in September 2014, Power made internal complaints that the football coach, Ricardo Rodriguez, had given painkillers to football players. (*Id.* ¶ 9.) These allegations were investigated by the Bayonne police but were dropped after the students denied receiving the

---

[1]　Citations to certain record items will be abbreviated as follows:

　　DE = Docket entry number

　　DSOMF = Defendants' statement of material facts (DE 93-1)

[2]　Power has not disputed defendants' statement of material facts, and I therefore accept them as uncontested. (DE 99 at 2.)

1

painkillers and declined to cooperate. (*Id.* ¶ 10-19.) Thereafter, Power made a similar report to the federal Drug Enforcement Agency, but the outcome if any is unclear, and defendants were not aware of the report when it was filed. (*Id.* ¶ 25.) The next year, Power made further complaints about Rodriguez's unsafe treatment of the football players and harassment of her. (*Id.* ¶ 26.) In 2014, plaintiff resigned her position as equipment manager of the football team, allegedly as a result of harassment by Rodriguez. (*Id.* ¶ 48.)

In October 2015, the district hired an independent investigator to look into Power's allegations. (*Id.* ¶ 30.) During the investigation the district determined that Rodriguez and Power should not work together and hired an outside contractor, Atlantic Health, to perform Power's duties as athletic trainer to the football team. (*Id.* ¶ 31.) During that time Power was not demoted and suffered no loss in compensation. (*Id.* ¶ 45.) Power's responsibility for training football players was restored in 2016 after Rodriguez left the school. (*Id.* ¶ 33.)

In 2016, however, Power had her salary partially withheld for reasons unrelated to her complaints about Rodriguez. The school board withheld her salary increment because it found she allowed students to grade one another's tests in health class and allowed students to use her personal vehicle to run errands. (*Id.* ¶ 34.) Power did not submit a rebuttal to these or other misconduct allegations and did not report them to her union. (*Id.* ¶ 35-40.)

Power first filed this case in July 2016 in the New Jersey Superior Court, Law Division, Hudson County. (DE 1.) The complaint included five Counts. Counts 1 and 2 alleged a violation of Power's free speech rights under both the federal and New Jersey constitutions. (DE 1-1 at p. 9-11.) Counts 2 and 3 alleged hostile work environment discrimination and retaliation under the New Jersey Law against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-12(a), (d). (DE 1-1 at 12-14.) Count 5 asserted breach of contract. (DE 1-1 at p. 14-15.) Defendants removed the case to this court. (DE 1.) In September 2016, defendants moved to dismiss the complaint. (DE 3.) For the most part I denied

the motion, but did dismiss the Count 5 contractual claims. I also noted that, although the complaint cited the Fourteenth Amendment in passing, it did not assert any direct Fourteenth Amendment claim. (DE 12 at 8-13.) The case was then repeatedly delayed as Power sought a new attorney (DE 26, 33, 38, 43.)

Discovery proceeded, and on February 11, 2020, Power sought to serve 90 requests for admission ("RFAs") on defendants. On February 26, 2020, defendants disputed the propriety of this request and asked Magistrate Judge Clark to strike it. (DE 66.) Following Judge Clark's order, the parties submitted a joint letter laying out their positions on April 24, 2020. (DE 67, 69.) Judge Clark declined to strike the RFAs and instead extended discovery and ordered defendants to answer the RFAs by June 1, 2020, which they did. (DE 71; DE 94, Ex. M.)

In February 2022, both sides filed motions for summary judgment. (DE 92, 93.) Both sides then filed responses and replies. (DE 94, 97, 98, 99.) This motion is now fully briefed and ripe for decision.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met the threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; see also Fed. R. Civ. P. 56(c) (setting forth types of evidence on which the nonmoving party must rely to support its assertion that genuine issues of material fact exist). In deciding a motion for summary judgment, the court's role is not to evaluate and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

When the parties file cross-motions for summary judgment, the governing standard "does not change." *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 401 (3d Cir. 2016) (citing *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987)). The court must consider the motions independently, in accordance with the principles outlined above. *Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 184 (D.N.J. 2009); *Williams v. Philadelphia Housing Auth.*, 834 F. Supp. 794, 797 (E.D. Pa. 1993), *aff'd*, 27 F.3d 560 (3d Cir. 1994). That one of the cross-motions is denied does not imply that the other must be granted. For each motion, "the court construes facts and draws inferences in favor of the party against whom the motion under consideration is made" but does not "weigh the evidence or make credibility determinations" because "these tasks are left for the fact-finder." *Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008) (internal quotation and citations

4

omitted); *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. ANALYSIS

Instead of proceeding count by count as I would usually do in a case of cross-motions for summary judgment, I first address Power's motion for summary judgment and deny it because it is based entirely on a demonstrably false legal premise. I then proceed to analyze defendants' motion for summary judgment, which I grant.

#### a. Power's motion for summary judgment

Power puts forward a single argument in favor of her motion for summary judgment and in opposition to defendants' motion. In essence she argues that she should win by default because defendants did not respond to her RFAs within 30 days and thus the RFAs should be deemed admitted. (DE 92 at 11-13.) Power's brief cites nothing in the record other than her RFAs. It is true that "matters deemed admitted due to a party's failure to respond to requests for admission are 'conclusively established' under Federal Rule of Civil Procedure 36(b), and may support a summary judgment motion." *Sec'y United States Dep't of Lab. v. Kwasny*, 853 F.3d 87, 91 (3d Cir. 2017). Here, however, defendants *did* timely respond to Power's RFAs, and Power's lone basis for summary judgment therefore fails.[3]

As discussed above, when defendants were first served with the RFAs on February 11, 2020, they moved to strike them as untimely. (DE 66.) Judge Clark eventually rejected that argument and ordered defendants to respond to the RFAs by June 1, 2020. Defendants did respond to the RFAs by June 1,

---

[3] In addition, Power requests summary judgment on the Count 5 contractual claim of breach of the implied covenant of good faith and fair dealing, as well as a direct claim under the Fourteenth Amendment claim. In my prior decision I dismissed Count 5 and found that the Complaint did not in fact allege any direct Fourteenth Amendment equal protection claim. (DE 92 at 18-25.) Those dismissals were entered without prejudice to amendment within 30 days. No motion to amend was ever filed. I therefore grant summary judgment in favor of defendants on those claims.

2020. (DE 71.) Power entirely ignores this sequence of events, which is convincingly laid out by defendants in their responsive brief. (DE 94, 98.)

Instead, Power argues that June 1 is more than thirty days after February 11, when the RFAs were first served. (DE 92 at 11.)  It is true, of course, that Federal Rule of Civil Procedure 36(a)(3) states, "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." The same rule, however, goes on to state "A shorter or longer time for responding may … be ordered by the court." Fed. R. Civ. P 36(a)(3). I find that defendants' letter dated February 26, 2020 constitutes an objection and response within 30 days to Power's RFAs. (DE 66.) Although defendants did not prevail in their request to strike the RFAs, they followed Judge Clark's order that they respond to the RFAs by June 1, 2020. (DE 71.)

Because defendants timely responded to the RFAs within the deadline set by the Court, the RFAs are not deemed admitted. As the RFAs constitute the entirety of Power's case for summary judgment, I must DENY her motion.

### b. Defendants' motion for summary judgment

In contrast, defendants have put forward a traditional motion for summary judgment that cites the record as required by Rule 56. (DE 93.) In her response and reply briefs, Power does not dispute any of defendants' legal arguments and repeats much of the argument of her own motion for summary judgment, which I have already rejected, that the RFAs must be deemed admitted. (DE 97 at 7-10; DE 98 at 3-5.) I nevertheless analyze each argument put forward by defendants and GRANT summary judgment in their favor.

### 1. First Amendment Retaliation (Counts 1 and 2)

Power brings her first two claims under 42 U.S.C. § 1983 and its New Jersey equivalent, the New Jersey Civil Rights Act, N.J.S.A. § 10:6-2. As I explained in my previous opinion in this case, both statutes grant a right of action for a violation of a constitutional right committed under color of state law. (DE 12 at 5-6.) In my previous opinion I found that Power had pleaded

facts sufficient to state a claim for *Monell* liability on behalf of the Bayonne Board of Education. (*Id.* at 6-8.) Defendants, however, argue that summary judgment should be granted in their favor because, *inter alia,* undisputed facts show that the type of speech in which Power engaged as a public employee was not protected by the First Amendment. I agree and grant defendants' motion for summary judgement as to Counts 1 and 2.

In order to establish a retaliation claim under the First Amendment, a plaintiff must allege (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). Here, defendants focus on the first element, arguing that Power's speech was pursuant to her job duties as a public employee and thus not protected by the First Amendment.

First Amendment protection of a public employee's speech is limited in some respects. A public employee's speech is fully protected by the First Amendment when the employee speaks about matters of public concern in her capacity as a private citizen. *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563, 571–72 (1968). When a public employee speaks pursuant to her official duties, however, that speech is not protected by the First Amendment. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) ("We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."); *see also Lane v. Franks*, 573 U.S. 228 (2014). Thus, for Power to prevail on Counts 1 and 2, she must, as a preliminary matter, establish that she spoke as a private citizen on a matter of public concern and that her speech was thus protected by the First Amendment. I find that she has not done so.

The Third Circuit has repeatedly held that when a public employee makes a complaint within the established "chain of command," that speech is pursuant to the employee's official duties and therefore not protected by the First Amendment. *Morris v. Philadelphia Hous. Auth.*, 487 F. App'x 37, 39 (3d Cir. 2012) ("We have consistently held that complaints up the chain of command about issues related to an employee's workplace duties—for example, possible safety issues or misconduct by other employees—are within an employee's official duties."); *see also Garcia v. Newtown Twp.*, 483 F. App'x 697, 703 (3d Cir. 2012) ("internal workplace matters and personal grievances … clearly fall outside the sphere of First Amendment protection"). The record reveals that the speech that Power alleges led to retaliation against her consisted entirely of complaints up the chain of command. Power repeatedly made written complaints to her immediate supervisor, the Athletic Director, and also spoke with other school board officials within the chain of command. (DSOMF ¶ 9-29.) There are no facts in the record to show that Power spoke in a public forum in her capacity as a private citizen about her complaints regarding Coach Rodriguez.[4] In fact, Power herself testified that her complaints were made pursuant to her job duties as Athletic Trainer. (DE 93, Ex. 14 at 16:24-17:5.) Thus, because her speech was made pursuant to her job duties as a public employee, rather than as a private citizen, her speech was not protected by the First Amendment and I must grant summary judgment for defendants on Counts 1 and 2.[5]

---

[4] Power's alleged report of her suspicions to the DEA could potentially be protected under the First Amendment, but there are no facts in the record that demonstrate that the defendants knew about the report. Without evidence showing that defendants knew about her report to the DEA, Power cannot establish that they retaliated against her because of the report.

[5] It is therefore unnecessary to reach defendants' alternative argument that Counts 1 and 2 must be dismissed because Power did not suffer a "retaliatory action sufficient to deter a person of ordinary firmness from exercising [her] constitutional rights." *Thomas v. Indep. Twp.*, 463 F.3d at 296. Here, Power identifies no threats or coercion and her claim that she was demoted is not supported by the record. She was, however, reassigned from her position as Athletic Trainer for the 2015 season to separate her from Rodriguez. Power had repeatedly claimed that she was unable to

### 2. Hostile Work Environment under NJLAD (Count 3)

Sexual harassment claims fall broadly into two categories: quid pro quo and hostile work environment. *Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 601 (1993). Here, Power does not allege quid pro quo harassment, but alleges that the actions of coach Rodriguez created a hostile work environment in a manner attributable to defendants.

The New Jersey Law Against Discrimination ("NJLAD") prohibits sexual harassment that is "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). To succeed on a hostile work environment claim, the plaintiff must establish that "1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). The first four elements define hostile work environment liability, and the fifth element extends that liability to the employer. *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).

Here, Power puts forward no argument whatever related to her hostile work environment claim. (*See* DE 92, 97, 98.) Although the record is clear that Power and Coach Rodriguez had a number of conflicts, that Power generally found him vulgar and unpleasant, and that she complained about his allegedly giving painkillers to the players, the record does not reveal any severe and pervasive harassment based on Power's gender. I must therefore grant summary judgment in favor of defendants on Count 3.

---

work with coach Rodriguez.) (DSOMF ¶¶ 28-31.) She suffered no loss of pay and her position as Athletic Trainer for the football team was restored in 2016, after Rodriguez left. (*Id.* ¶¶ 32-33.)

### 3. Retaliation under NJLAD (Count 4)

To prove a retaliation claim under the NJLAD, a plaintiff show "(1) that [s]he engaged in a protected activity; (2) that [s]he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action." *Sgro v. Bloomberg L.P.*, 331 F. App'x 932, 939 (3d Cir. 2009) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001). Power does not address this Count in her briefs.[6] I therefore grant summary judgment in favor of defendants on Count 4, Power's claim of retaliation in violation of the NJLAD.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (DE 93) is **GRANTED** and Plaintiff's motion for summary judgment (DE 92) is **DENIED**.

Dated: August 19, 2022

/s/ Kevin McNulty

**HON. KEVIN MCNULTY, U.S.D.J.**

---

[6]   In addition, as discussed at Sec. III.b.1, *supra*, no record evidence cited by any party tends to show that Power suffered an adverse employment action that was related to protected activity.